Blenda **AKRIDGE**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 09–99–025 CR.

Court of Appeals of Texas, Beaumont.

Submitted Dec. 9, 1999.

Decided Feb. 2, 2000.

Timothy A. Hootman, Hootman & Company, Houston, for appellant.

Clyde M. Herrington, Dist. Atty., Art Bauereiss, Asst. Dist. Atty., Lufkin, for state.

Before WALKER, C.J., BURGESS and STOVER, JJ.

**OPINION**

RONALD L. WALKER, Chief Justice.

A grand jury indicted Blenda Akridge on two counts of intoxication assault, committed July 4, 1998. TEX. PEN. CODE ANN. § 49.07 (Vernon 1994).[1] Two enhancement paragraphs raised her exposure on punishment to that of an habitual offender. TEX. PEN. CODE ANN. § 12.42 (d) (Vernon Supp. 2000). Akridge pleaded guilty pursuant to a plea bargain agreement in which the State abandoned one of the enhancement allegations and the trial court sentenced Akridge to twenty years of confinement in the Texas Department of Criminal Justice, Institutional Division. Akridge filed a motion for new trial, alleging her plea was not knowingly and voluntarily entered. The trial court denied the motion for new trial after conducting an evidentiary hearing. Akridge raises two issues on appeal.

■ Issue two asks, "When a lawyer represents a client accused of a crime and acts as bondsman, must the lawyer advise the client of the potential conflicts of interest in writing?" As presented in the Appellant's brief, this issue presents a claim of ineffective assistance of counsel at trial. Akridge's plea of guilty was unconditional. Cf. *Young v. State*, 8 S.W.3d 656 (Tex. Crim.App. 2000)(not yet reported). Akridge did not obtain the trial court's permission to appeal. We do not have the jurisdiction to review claims of ineffective assistance of counsel in an appeal from a plea-bargained conviction. *Lyon v. State*, 872 S.W.2d 732, 736 (Tex.Crim.App.1994); TEX.R.APP. P. 25.2(b)(3). Issue two is dismissed. The arguments presented under issue two are also presented by issue one, which asks, "Was appellant's guilty plea freely and voluntarily entered?" We do have jurisdiction over a claim of involuntariness of the guilty plea. *Flowers v. State*, 935 S.W.2d 131, 132–34 (Tex.Crim. App.1996); *Minix v. State*, 990 S.W.2d 922, 923 (Tex.App.—Beaumont 1999, pet. ref'd).

■ "When a defendant challenges the voluntariness of a plea entered upon the advice of counsel, contending that his counsel was ineffective, 'the voluntariness of the plea depends on (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and if not, (2) whether there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Ex parte Moody*, 991 S.W.2d 856, 857–58 (Tex.Crim.App.1999)(quoting *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim.App.1997)). Akridge argues that by acting as her bondsman, trial counsel entered into a business transaction with his client that resulted in a conflict of interest. "In order for a defendant to demonstrate a violation of his right to the reasonably effective assistance of counsel based on a conflict of interest, he must show (1) that defense counsel was actively representing conflicting interests, and (2) that the conflict had an adverse effect on specific instances of counsel's performance." *Ex parte Morrow*, 952 S.W.2d at 538 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)).

1. Section 49.07 was amended in 1999. *See* TEX. PEN.CODE ANN. § 49.07 (Vernon Supp. 2000).

■ Akridge argues she established conflict of interest because counsel did not comply with the Rules of Professional Conduct by obtaining Akridge's written consent to enter into a business transaction. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.08, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998)(TEX. STATE BAR. R. art. X, § 9). An attorney is exempt from the bail bond license requirements if he executes the bond in the course of representing the principal. TEX. OCC.CODE ANN. § 1704.163 (Vernon Pamph.2000). Such is the case here; trial counsel acted as surety on Akridge's bond as part of his legal representation of her, not as a separate business transaction. Because the act is encompassed within the larger legal relationship, acting as surety on an appearance bond does not create a *per se* conflict of interest between the attorney and his client. We must, therefore, look to the record for evidence of an actual conflict of interest.

■ The record includes three letters from trial counsel to Akridge. The first, dated October 5, 1998, advises Akridge that docket call is October 13, that jury selection, if any, will be held October 19, and that she must be present in his office on those dates. The letter also mentions the balance due on her account and sets an office appointment to discuss her case. Akridge paid trial counsel $100 on October 14. The case did not go to trial in October. The second letter, dated October 21, 1998, informs Akridge of the amount of the unpaid balance on his fee, states docket call is set for November 9 and jury selection is set for November 16, and that she must make arrangements to be at his office on those dates. This letter also warns Akridge that trial counsel intended to file a motion to surrender on the bond if she does not pay the balance due on her account by October 26. On October 26, Akridge paid trial counsel $300, an amount substantially less than what she owed. The third letter, dated October 26, repeats the October 21 information regarding docket call and jury selection and tells her

the balance of the fee must be made before trial, but makes no mention of an intention to surrender the bond.

In the motion for new trial hearing, trial counsel testified that Akridge's previous counsel had made her bond for her, and that trial counsel made her bond when he assumed her legal representation and charged her a fee which included any fee for the bond. According to counsel, when Akridge first signed the bond, he informed her that he could remain her bondsman as long as he represented her on the criminal case, but that the law would not allow him to act as her bondsman unless he was actively representing her in the case. Trial counsel did not withdraw the bond, nor did he withdraw from representing Akridge, although she had not paid his entire fee. Trial counsel denied that one reason Akridge pleaded guilty was because of the pressure that was being put on her to pay her bill. Trial counsel noted that with ten or eleven convictions Akridge was not intimidated by the judicial system and had, in fact, fired her previous attorney who also had been on her bond. According to trial counsel, Akridge's decision to plead guilty was made after nineteen visits with him and after they went over the district attorney's entire file on her case. He went over the waivers and stipulations with Akridge and she was not confused or uninformed about them.

Akridge did not testify in the motion for new trial hearing. The court sustained the State's hearsay objection to the affidavit attached to her motion for new trial. The affidavit was excluded from evidence in the hearing, and the trial court refused to consider it.

Akridge failed to meet her burden of establishing an actual conflict of interest pursuant to the first prong of the *Cuyler v. Sullivan* test. Trial counsel's efforts to collect his fee included a warning that he would not continue as surety on the bond if she did not pay his fee. The lawyer's interest in being paid for his services did not conflict with the client's interest in obtaining a fair trial. Nor can it be said

that counsel's interest in being paid for his services adversely affected his performance, as he continued to represent Akridge even though his fee had not been fully paid.

In the plea proceedings, Akridge testified no one promised her anything beyond the plea bargain agreement, that she was pleading guilty because she was guilty, and that understood the proceedings that day. The trial court admonished Akridge both orally and in writing, then orally stated the terms of the plea bargain agreement, which Akridge testified reflected the plea bargain agreement as she understood it.

In addition to the evidence already discussed, trial counsel admitted he told Akridge he thought the law was against her on the suppression of the .18 and .16 blood alcohol level tests on the basis her status as a Jehovah's witness. He also admitted that the police report stated one eyewitness, who cohabits with Akridge, stated the other car ran the red light. Counsel insisted that had Akridge decided to go to trial he would have made every argument possible, but her decision was to accept the plea bargain offer. We conclude Akridge has not rebutted the prima facie showing of voluntariness, nor has she established that counsel misled her into entering a guilty plea. Noticeably absent from the record of the motion for new trial hearing is any evidence to support the second prong of *Strickland v. Washington*. Although her motion for new trial alleges her plea was not knowingly and voluntarily entered, Akridge did not testify that but for counsel's deficient advice she would not have pleaded guilty but would have insisted upon going to trial.

The record supports the trial court's implied finding that Akridge's plea was freely and voluntarily entered. Issue two is overruled. The judgment of the trial court is affirmed.

AFFIRMED.