In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00028-CR


______________________________




MICHAEL LOUIS BRISCO, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 282nd Judicial District Court


Dallas County, Texas


Trial Court No. F-0173362-PS




 




Before Grant, Ross, and Cornelius,* JJ.


Opinion by Justice Grant




______________

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment

O P I N I O N



 Michael Brisco appeals his conviction of murder. The punishment range for the offense was
enhanced under the habitual offender statute by a finding that he had two prior felony convictions
and that the second felony conviction was for an offense that occurred after the first felony
conviction became final. See Tex. Pen. Code Ann. § 12.42(d) (Vernon Supp. 2002). Brisco
pleaded guilty as part of a plea bargaining agreement under which he was sentenced to twenty-five
years' imprisonment.

 Brisco's attorney has filed an appellate brief in which she concludes that after a review of the
record and the related law, the appeal is frivolous and without merit. She has evaluated the record
and has found no error that arguably supports an appeal. The brief thus meets the requirements of
Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and Stafford v. State, 813
S.W.2d 503 (Tex. Crim. App. 1991).

 Brisco has filed a pro se response in which he contends his guilty plea was involuntary
because he received ineffective assistance of counsel. If an appeal is from a judgment rendered on
the defendant's plea of guilty under Tex. Code Crim. Proc. Ann. art. 1.15 (Vernon Supp. 2002),
and the punishment assessed did not exceed the punishment recommended by the prosecutor and
agreed to by the defendant, the appellant's notice of appeal must specify: (1) that the appeal concerns
a jurisdictional defect, (2) that the substance of the appeal was raised by written motion and ruled
on before trial, or (3) that the trial court granted the appellant permission to appeal. Tex. R. App. P.
25.2(b)(3). A notice of appeal that does not conform to Rule 25.2(b)(3) deprives this court of
jurisdiction over the appeal. Woods v. State, 68 S.W.3d 667, 669 (Tex. Crim. App. 2002).

 To appeal the voluntariness of a guilty plea, an appellant must file a notice of appeal in
conformance with Rule 25.2(b)(3). Cooper v. State, 45 S.W.3d 77, 79-80 (Tex. Crim. App. 2001). 
In addition, to appeal a claim of ineffective assistance of counsel at the guilt/innocence phase of trial,
an appellant must file a notice of appeal in conformance with Rule 25.2(b)(3). See Proctor v. State,
45 S.W.3d 762, 763 (Tex. App.-Corpus Christi 2001, no pet.); Akridge v. State, 13 S.W.3d 808, 809
(Tex. App.-Beaumont 2000, no pet.); Lowe v. State, 997 S.W.2d 670, 672 (Tex. App.-Dallas 1999,
no pet.); Luna v. State, 985 S.W.2d 128, 130 (Tex. App.-San Antonio 1998, pet. ref'd); see also
Kirtley v. State, 56 S.W.3d 48, 51-52 (Tex. Crim. App. 2001) (holding a claim of ineffective
assistance of counsel at punishment phase is an issue unrelated to conviction and is, therefore, not
subject to notice requirements of Rule 25.2(b)(3)).

 In the present case, Brisco's pro se Notice of Appeal does not specify that his appeal concerns
a jurisdictional defect, that he is appealing the trial court's rulings on his pretrial motions, or that the
trial court granted him permission to appeal. Therefore, we are without jurisdiction to consider the
issues he raises in his pro se response. We have also conducted our own review of the record and
discern no arguable issues for appeal.

 The appeal is dismissed for want of jurisdiction.



 Ben Z. Grant

 Justice


Date Submitted: June 24, 2002

Date Decided: June 25, 2002


Do Not Publish



 Roman', serif">                                              

On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 19930


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            For his part in stealing beer from a garage, and after enhancement,


 a jury assessed Allan
Cunningham twenty-five years' incarceration for burglary of a habitation.


 On appeal, Cunningham
argues that we should reverse his conviction because: (1) the trial court failed to charge the jury that
Bobby Lemon, the codefendant who actually entered the building and took the beer, was an
accomplice witness as a matter of law, (2) the court erred by denying his motion for an instructed
verdict based on the failure to connect him with the crime by nonaccomplice evidence, and (3) the
evidence was legally and factually insufficient to support the verdict. He also contends he received
ineffective assistance of counsel because counsel did not request an accomplice-witness instruction,
failed to object to the admission of evidence about juvenile adjudications, and failed to adequately
impeach a witness. We affirm the judgment of the trial court. 
Background Facts
            Cunningham was riding around with Lemon and Christopher Ray (in Ray's sister's car) when
they backed into the driveway of John Lightfoot's house. As Lemon testified, they were all pretty
well "lit." Lemon testified that he went inside the garage to steal something, and ended up taking
beer out of a cooler. When Lemon came back out with stolen beer in hand, Cunningham was
arguing with one of Lightfoot's neighbors (Larry Buster) who came to make inquiry. A fight ensued,
and both Cunningham and Lemon struck Buster before they drove away, leaving him unconscious
in the driveway. Ray testified that he stayed in the car, that Lemon said it was a friend's house, and
that he had no idea a crime would occur.
            Buster testified that, when he saw the car backed into Lightfoot's driveway, he went over to
see what was going on, and he saw Cunningham in the car. Buster testified that Cunningham yelled
at him and got out of the car, and about then he saw someone else come out of the garage with beer
in his hand, and that both Cunningham and Lemon hit and kicked him until he blacked out. 
            Lightfoot testified he was in the house and did not hear the fight. Buster, bloody from the
battle, banged on his door and told him what had happened. Lightfoot checked his garage and
realized some beer was missing from an ice chest. 
            Lemon testified that, after this occurred, while they were driving around, he saw a pickup
truck with tools in the back. He got out and stole the truck and drove away—with Cunningham
following in Ray's sister's car. Lemon stopped near a business, unloaded the items from the truck
into the car, left the truck there, Lemon got in the car, and Cunningham drove the automobile away. 
            Officer Steven Hill testified that he worked the assault and burglary. Officers stopped the
car and arrested Lemon and Cunningham. When officers inventoried the car, they found three cans
of beer of the type in Lightfoot's cooler, and also found tools, a C.D. case, a rifle, a cell phone, a
video camera, and other items that were identified as property stolen from the pickup truck.
Failure to Instruct the Jury on the Accomplice-Witness Rule
            A. Lemon was an accomplice as a matter of law—egregious harm standard.
            Lemon was an accomplice as a matter of law in this case.


 He was indicted and convicted
for the same offenses and was in prison at the time of this trial. "A conviction cannot be had upon
the testimony of an accomplice unless corroborated by other evidence tending to connect the
defendant with the offense committed; and the corroboration is not sufficient if it merely shows the
commission of the offense." Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). Cunningham
did not request an instruction to the jury on the requirement of corroborating an accomplice witness'
testimony, and no such instruction was given. In such event, when error occurs in failing to properly
instruct the jury on the accomplice-witness rule, our review of the charge is under the Almanza
standard. Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App. 1984). The appropriate harm analysis
depends on whether the defendant preserved error by bringing the improper omission to the trial
court's attention. When the error is preserved, we must reverse if "some harm" is shown. But when,
as in this case, the defendant has not preserved error, he must show egregious harm. Under either
instance, we must review the entirety of the record in reaching our determination. Id. at 171. The
difference in harm standards impacts how strong the nonaccomplice evidence must be for the error
in omitting an accomplice-witness instruction to be considered harmless. Herron v. State, 86 S.W.3d
621, 632 (Tex. Crim. App. 2002).
            The Texas Court of Criminal Appeals has held that, in applying the egregious harm standard,
the omission of an accomplice-witness instruction is generally harmless unless the corroborating
(nonaccomplice) evidence is "so unconvincing in fact as to render the State's overall case for
conviction clearly and significantly less persuasive." Id.; Saunders v. State, 817 S.W.2d 688, 692
(Tex. Crim. App. 1991). 
            In Saunders, the court found harm under that standard because the corroborating
nonaccomplice evidence was weak and was contradicted by other evidence. The alleged crime was
arson and the corroborating evidence involved financial circumstances that seemed somewhat
suspicious at first glance but were given persuasive innocent explanations. As a result, the
corroborating evidence, even if believed, did not have a very strong tendency to connect the
defendant to the crime. Further, much of the evidence in the defendant's favor was uncontradicted,
and the court observed that "[r]ational jurors may not utterly disregard undisputed evidence without
a sensible basis for thinking it unreliable any more than they may simply assume a critical part of the
proof without evidence having an inclination to confirm it." Saunders, 817 S.W.2d at 693.
            In determining the strength of a particular item of nonaccomplice evidence, we examine
(1) its reliability or believability, and (2) the strength of its tendency to connect the defendant to the
crime. Herron, 86 S.W.3d at 632. The test for weighing the sufficiency of corroborating evidence
is to eliminate from consideration the accomplice's testimony and then examine the remaining
evidence to determine if there is evidence that tends to connect the defendant with the commission
of the offense. Munoz v. State, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993); Reed v. State, 744
S.W.2d 112, 125 (Tex. Crim. App. 1988); Hall v. State, 161 S.W.3d 142, 149 (Tex.
App.—Texarkana 2005, pet. ref'd). The nonaccomplice testimony does not have to directly link the
accused to the crime, it alone need not establish guilt beyond a reasonable doubt, nor must the
corroborating evidence prove all the elements of the alleged offense. Gill v. State, 873 S.W.2d 45,
48 (Tex. Crim. App. 1994). The accused's presence at the scene of the crime is, by itself, insufficient
to corroborate an accomplice's testimony. However, "evidence that an accused was in the company
of the accomplice close to the time of the offense, coupled with other suspicious circumstances, may
tend to connect the accused to the offense." Id. at 49. 
            B. The nonaccomplice testimony connects Cunningham to the burglary.
            In this case, there was nonaccomplice evidence from the neighbor, Buster, that Cunningham
was in the car and that Cunningham attacked him for no reason other than his inquisitiveness. This
response could reasonably have been interpreted by the jury as an effort to aid and assist in the
burglary and to prevent being seen with items stolen from the house. The jury could reasonably have
concluded that this violent reaction evidenced Cunningham's intent to help Lemon complete the theft
and escape. 
            Ray, the other person in the car,


 testified that Cunningham drove the vehicle to the home that
was robbed; Ray saw Cunningham kicking and stomping Buster, and Ray told Cunningham and
Lemon that they had done a bad thing by attacking and beating the man—after which they beat Ray
up and left him (although still driving Ray's sister's car). 
            There is no evidence in this case that Cunningham personally stole the beer. The jury
necessarily convicted him (as provided by the charge) as a party criminally responsible for the
offense committed by Lemon. That type of responsibility exists if "with intent to promote or assist
the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other
person to commit the offense." Tex. Pen. Code Ann. § 7.02(a)(2) (Vernon 2003). 
            In this case, there is nonaccomplice testimony that Cunningham was driving the vehicle in
which Lemon and Ray were riding when they went to Lightfoot's house. Lemon entered the garage
and came out with beer. As Lemon was engaged in the burglary, a neighbor came to investigate. 
Cunningham got out of the car and attacked, without provocation, the neighbor who came to inquire
about their actions. Cunningham assisted in attacking Buster, and Cunningham then drove them
away, leaving him on the ground. The evidence shows that Lemon stole the beer from the house,
that Lemon and Cunningham were arrested together, and that the fruits of the theft were found in the
car. Intent may be directly proven, or it may be inferred from circumstantial evidence such as acts,
words, and the conduct of the appellant. Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim. App.
2004). 
            Although it is clear that an accomplice-witness instruction should have been provided to the
jury, we do not believe that egregious harm resulted from its absence. The nonaccomplice evidence
was of a nature that a jury could reasonably believe was reliable, persuasive, and connected
Cunningham to the burglary. The nonaccomplice evidence, as summarized above, is not "so
unconvincing in fact as to render the State's overall case for conviction clearly and significantly less
persuasive." Herron, 86 S.W.3d at 632. Points of error one and two are overruled. 
Legal and Factual Sufficiency
            Cunningham next contends that the evidence is legally and factually insufficient to support
the verdict. In our review of the legal sufficiency of the evidence, we employ the standards set forth
in Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the reviewing court to view the
relevant evidence in the light most favorable to the verdict and determine whether any rational trier
of fact could have found the essential elements of the crime beyond a reasonable doubt. Johnson v.
State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In our review, we must evaluate all the evidence in
the record, both direct and circumstantial, whether admissible or inadmissible. Dewberry v. State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999).
            In a factual sufficiency review, the appellate court views all the evidence in a neutral light
and determines whether the evidence supporting the verdict is too weak to support the finding of
guilt beyond a reasonable doubt or if evidence contrary to the verdict is strong enough that the
beyond-a-reasonable-doubt standard could not have been met. Threadgill v. State, 146 S.W.3d 654,
664 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144 S.W.3d 477, 486 (Tex. Crim. App. 2004)).
            We have summarized the evidence above. There is evidence that the crime occurred and that
Cunningham took violent action against a witness to the crime. The accomplice witness testified that
he did not remember telling Cunningham before the burglary that he intended to steal from the
house. ("I'm not saying they didn't know but I'm saying that I was drinking and I'm saying I don't
remember . . . discussing this with somebody.") However, the district attorney's investigator testified
that Lemon had stated to him that Lemon and Cunningham had discussed "stealing something" at
the Lightfoot house before the burglary. The fruits of the crime were in the automobile driven by
Cunningham at the time of his arrest. The evidence is both legally and factually sufficient to support
the verdict. The contentions of error are overruled. 
Ineffective Assistance of Counsel
            Finally, Cunningham contends that he received constitutionally ineffective assistance of
counsel at trial because of the failure to obtain an instruction on accomplice-witness testimony,
because counsel did not object when his juvenile adjudications were admitted into evidence, and
because of the failure to impeach a witness with a prior statement that the codefendant was the
aggressor. 
            When ineffective assistance is raised on direct appeal, appellate counsel and the court must
proceed on a trial record not developed for the object of litigating or preserving the claim, and thus,
it is often incomplete or inadequate for this purpose. Freeman v. State, 125 S.W.3d 505, 506 (Tex.
Crim. App. 2003).
            The standard for testing claims of ineffective assistance of counsel is set out in Strickland
v. Washington, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance, an appellant
must, by a preponderance of the evidence, prove: (1) trial counsel's performance fell below an
objective standard of reasonableness, and (2) counsel's deficient representation prejudiced the
appellant's defense. Id.; Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). To meet this
burden, an appellant must show that the attorney's representation fell below the standard of
prevailing professional norms and that there is a reasonable probability that, but for the attorney's
deficiency, the result of the trial would have been different. Tong v. State, 25 S.W.3d 707, 712 (Tex.
Crim. App. 2000). In other words, the appellant must prove counsel's representation so undermined
the proper functioning of the adversarial process that the trial cannot be relied on as having produced
a just result. Strickland, 466 U.S. at 686. If, however, "there is at least the possibility that the
conduct could have been legitimate trial strategy," then we must "defer to counsel's decisions and
deny relief on an ineffective assistance claim on direct appeal." Murphy v. State, 112 S.W.3d 592,
601 (Tex. Crim. App. 2003).
            Our review of counsel's representation is highly deferential, and we indulge a strong
presumption that counsel's conduct falls within a wide range of reasonable representation. 
Strickland, 466 U.S. at 689; Tong, 25 S.W.3d at 712. An appellate court should not second-guess
through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have
pursued a different course support a finding of ineffectiveness. Blott v. State, 588 S.W.2d 588, 592
(Tex. Crim. App. 1979). That another attorney, including appellant's counsel on appeal, might have
pursued a different course of action does not necessarily indicate ineffective assistance. Harner v.
State, 997 S.W.2d 695, 704 (Tex. App.—Texarkana 1999, no pet.). Any allegation of
ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate
the alleged ineffectiveness. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).
            A. Failure to request an instruction on the accomplice-witness rule.
            Counsel did not request a jury instruction that the accomplice-witness testimony must be
corroborated. We have recently addressed this issue in our opinion in Hall v. State, 161 S.W.3d 142
(Tex. App.—Texarkana 2005, pet. ref'd). As we pointed out there, the failure of counsel to request
an accomplice-witness instruction when facts warrant such an instruction may constitute deficient
performance. Id. at 152; Henson v. State, 915 S.W.2d 186, 197 (Tex. App.—Corpus Christi 1996,
no pet.) (citing Ex parte Zepeda, 819 S.W.2d 874, 877 (Tex. Crim. App. 1991)). It is uncontested
that Lemon was an accomplice as a matter of law, and thus, the instruction, which could only favor
the defense, was mandatory on request.
            Unlike the situation in Hall, however, the evidence corroborating the accomplice's testimony
in this case is not weak. Even without the accomplice-witness testimony, there is evidence that
strongly supports a conclusion that Cunningham was involved in the burglary. Buster walked up on
this burglary as it was occurring. After routine inquiries, Cunningham attacked him in what the jury
could reasonably believe was an effort to conceal the burglary. Without repeating the evidence
previously elicited, we find that the corroborating evidence was both compelling and persuasive. 
Even though counsel's failure to request the instruction was deficient, based on the analysis
previously conducted on the evidence elicited at the trial, as well as all of the surrounding
proceedings, we are not convinced from this record that the failure created a reasonable probability
that the result of the trial would have been different in the absence of the deficient conduct. 
Strickland, 466 U.S. at 687.
            B. Failure to object to juvenile adjudications.
            Cunningham also argues that his counsel was deficient because he did not object to the
admission of evidence about his juvenile adjudications at the punishment stage of the trial. The
complained-of evidence consists of a list of juvenile adjudications, many from another state, and
some of which were felony level, while others were misdemeanor. We also recognize the State
mentioned Cunningham's juvenile history several times during argument as a basis for a sentence
of lengthy incarceration.
            Article 37.07, Section 3(a)(1), states that "evidence may be offered by the state and the
defendant of an adjudication of delinquency based on a violation by the defendant of a penal law of
the grade of: (A) a felony; or (B) a misdemeanor punishable by confinement in jail." Tex. Code
Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2006). However, such evidence is limited. 
Article 37.07, Section 3(i), states as follows:
Evidence of an adjudication for conduct that is a violation of a penal law of the grade
of misdemeanor punishable by confinement in jail is admissible only if the conduct
upon which the adjudication is based occurred on or after January 1, 1996.

Tex. Code Crim. Proc. Ann. art. 37.07, § 3(i) (Vernon Supp. 2006).


 See generally Wallace v.
State, 135 S.W.3d 114, 120 (Tex. App.—Tyler 2004, no pet.).
            The net effect of these provisions is that juvenile adjudications of delinquency which 
occurred before January 1, 1996, are not admissible, as prior adjudications of delinquency, unless
the adjudication was for a felony-grade offense. An objection to juvenile adjudications of the grade
of misdemeanor, all of which occurred before January 1, 1996, should have prevented their
admission as adjudications. However, evidence of the conduct underlying such an adjudication may
be admissible as extraneous crimes or prior bad acts if properly proven. Tex. Code Crim. Proc.
Ann. art. 37.07, § 3(a)(1); Rodriguez v. State, 975 S.W.2d 667, 687 (Tex. App.—Texarkana 1998,
pet. ref'd). In this case, no evidence of such bad acts was presented during the State's case, other than
the attempt to introduce these offenses as adjudications of delinquency. The document introduced,
Exhibit 29, was only a summary in a presentence report, not certified copies of judgments. No other
evidence was presented during the State's case concerning the conduct of Cunningham that led to
the adjudications. Exhibit 29 shows Cunningham's convictions as follows:
November 28, 1993    motor-vehicle larceny—(unauthorized use of a motor vehicle—or burglary
of a motor vehicle) (F)



November 28, 1993    Injured property (M)
November 28, 1993    Larceny (M)
February 1, 1994        Motor vehicle larceny (F)
February 1, 1994        Breaking and entering a motor vehicle—(burglary of a motor vehicle)
(three counts) (F)
February 24, 1994      Motor-vehicle larceny (F)
December 7, 1994      Assault (M)
October 26, 1995        Community threat 
November 29, 1995    Disorderly conduct
November 29, 1995    Credit card abuse
November 29, 1995    Assault of a police officer (M)
November 28, 1995    Injured property (M)

            The State acknowledged at trial that "some of these are misdemeanors and some are
felonies." 
            The State is allowed in the punishment hearing to prove evidence of extraneous offenses and
even bad acts that are deemed relevant and shown beyond a reasonable doubt by the evidence to have
been committed by the defendant regardless of whether he or she was charged or convicted of such
crimes or acts. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1). One method of providing such
proof beyond a reasonable doubt is to question the defendant when he or she voluntarily submits to
cross-examination. Cunningham testified and acknowledged his juvenile record. On direct
examination, Cunningham was asked by his counsel, "So, you do not deny the juvenile record that
has been presented to the jury today? A. No, sir." He was then asked if he denied the misdemeanor
record and answered that some were dismissed. On cross-examination, the State questioned
Cunningham about the specific events shown on his juvenile record. 
            It is conceivable that counsel's actions were strategically planned. Since Cunningham was
requesting the jury grant him community supervision in lieu of confinement, counsel may have
thought it necessary to present Cunningham's testimony, knowing such action subjected him to cross-examination, which would allow the State to prove his juvenile record as constituting admissible bad
acts. See Rodriguez, 975 S.W.2d at 687; Strasser v. State, 81 S.W.3d 468, 470 (Tex.
App.—Eastland 2002, no pet.). Counsel could have believed that the only effective method of
convincing a jury to grant community supervision to Cunningham was to allow him to testify; let
him explain that his prior juvenile record occurred while he was young and without guidance; and
urge that he had reformed. To accomplish this goal, counsel may have calculated that it was more
persuasive to admit that Cunningham had a poor record as a young person, but explain he had never
been convicted as an adult of a felony offense and was eligible for community supervision.


 Such
an attempt could have been to attempt to personalize Cunningham to the jury as a young person who
had no parental guidance as a child, but who now admitted his prior mistakes and accepted societal
rules. The evidence presented by Cunningham appears to substantiate this as the defense strategy. 
Cunningham testified that he had never been convicted as an adult of a felony; he had no parental
assistance as a child; he took full responsibility for his bad choices; before the charges were filed he
had enlisted in the United States Army; he was attempting to change his life by enrolling in a
computer school; and that, if he received community supervision, he would still have his job. In
closing argument, counsel argued that Cunningham had turned his life around and asked the jury to
grant community supervision. We have no record from which to evaluate the rationale of counsel
in choosing the course of action that he did, and it is beyond our purview to second guess counsel's
strategy even if the choice of strategy was not successful. As the Texas Court of Criminal Appeals
has held many times, "In most instances, the record on direct appeal is inadequate to develop an
ineffective assistance claim." Ex parte Torres, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997). If
there is at least the possibility that the conduct could have been legitimate trial strategy," then we
must "defer to counsel's decisions and deny relief on an ineffective assistance claim on direct
appeal." Murphy v. State, 112 S.W.3d 592, 601 (Tex. Crim. App. 2003).
            From this record, Cunningham has not shown this Court that trial counsel's actions were
below an objective standard of reasonableness. 
            C. Failure to impeach witness.
            Cunningham also contends that counsel was ineffective because he did not impeach Buster
with his prior written statement to police. Buster testified that both Lemon and Cunningham were
hitting and kicking him and that he could not tell who threw the first blow. On cross-examination,
he testified he was not sure who had attacked him first. Appellate counsel argues that Buster's
statement had indicated that Lemon had initially attacked him and that trial counsel was inadequate
because, although referring to the statement, he did not seek to introduce the statement by the use
of extrinsic evidence. See Tex. R. Evid. 613(a). 
            This constitutes a question of trial tactics. We do not have a copy of the statement, thus, we
do not know its contents, but from counsel's description it appears to show nothing more than which
of the two hit Buster first. This is not a particularly important issue, and counsel may well have felt
it was of insufficient importance to spend additional time and energy—in effect—showing the jury,
again, that his client hit and kicked a man in his mid-70's who was trying to protect an even older
man living next door. The contention of error is overruled.
            We affirm the judgment.
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          August 19, 2006
Date Decided:             September 19, 2006
 
Do Not Publish