# NO. 12-22-00113-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ZATAYMON TIMON SKINNER,*<br>*APPELLANT* | *§* | *APPEAL FROM THE 159TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | *§* | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Zataymon Timon Skinner appeals his conviction for aggravated kidnapping and robbery. Appellant presents seven issues on appeal. We affirm.

## BACKGROUND

Appellant was charged by indictment with aggravated sexual assault, aggravated kidnapping, and robbery. He pleaded "not guilty," and the matter proceeded to a jury trial. The jury ultimately found Appellant "guilty" of aggravated kidnapping and robbery but "not guilty" of aggravated sexual assault. At the punishment phase, Appellant pleaded "true" to the enhancement paragraphs regarding prior convictions. At the conclusion of the punishment phase, the jury sentenced Appellant to eighty years imprisonment for aggravated kidnapping and seventy years imprisonment for robbery. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his fifth issue, Appellant contends the evidence is insufficient to support his conviction for aggravated kidnapping. Specifically, he urges that because he was found not guilty of the underlying crime, aggravated sexual assault, he cannot be guilty of aggravated kidnapping.

**Standard of Review and Applicable Law**

The ***Jackson v. Virginia***[1] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See **Brooks v. State***, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See **Jackson***, 443 U.S. at 315-16, 99 S. Ct. at 2686-87; *see also **Escobedo v. State***, 6 S.W.3d 1, 6 (Tex. App.—San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; *see also **Johnson v. State***, 871 S. W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; ***Johnson***, 871 S.W.2d at 186. This requires the reviewing court to defer to the jury's credibility and weight determinations, because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. ***Brooks***, 323 S.W.3d at 899; *see **Jackson***, 443 U.S. at 319, 99 S. Ct. at 2789. A "court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution." ***Jackson***, 443 U.S. at 326, 99 S. Ct. at 2793. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See **Tibbs v. Florida***, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed 2d 642 (1982).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See **Malik v. State***, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the state's burden of proof or unnecessarily restrict the state's theories of liability, and adequately describes the particular offense for which the defendant is tried." ***Id***.

A person commits aggravated kidnapping if he intentionally or knowingly abducts another person with the intent to inflict bodily injury on her or violate or abuse her sexually. Tex. Penal Code Ann. § 20.04(a)(4) (West 2019). A person also commits the offense of

---

[1] 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979).

aggravated kidnapping if the person "intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense." *Id.* § 20.04(b). "Abduct" means to restrain a person with intent to prevent her liberation by (1) secreting or holding her in a place where she is not likely to be found or (2) using or threatening to use deadly force. *Id.* § 20.01(2)(A)-(B) (West Supp. 2022). "Restrain" means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person. *Id.* § 20.01(1)(A). Restraint is "without consent" if it is accomplished by force, intimidation, or deception. *Id.*

**Analysis**

Appellant urges that because he was found "not guilty" of aggravated sexual assault, the evidence is insufficient to prove he intended to sexually abuse Jane Doe.[2]

According to Doe, Appellant came to Burger King after her shift and asked her to take him to the store. After Appellant got into the vehicle, he insisted on driving and began threatening her. Doe claimed that Appellant threatened her several times that night. She described him as scary and testified to being afraid he would kill her. Doe testified that Appellant asked her for voluntary sex, but when she refused, he raped her. She subsequently asked if she could get dressed, and he told her to get into the trunk instead. Using the trunk's latch, Doe opened the trunk while the car was moving in an attempt to escape. She eventually escaped and called 911. After speaking with the police, Doe underwent a sexual assault examination.

Officer Cody Deal of the Lufkin Police Department responded to Doe's 911 call. Doe told Deal that a man was standing beside her vehicle when she got off work. The man threatened to kill her if she did not get into the vehicle. Doe stated that she was forced to drive from that location, and eventually told to stop so that he could drive. She alleged that he drove to a secluded location, raped her, and then basically threw her in the trunk and drove away with her in the trunk. Doe was very distraught and clearly in distress. Deal stated that he could tell that she just experienced some type of traumatic event. She was crying and hysterical.

Norma Sanford, a sexual assault nurse examiner (SANE), testified that she performed a SANE exam on Doe after the incident. Sanford stated that Doe was nervous, scared, animated,

---

[2] The victim is referred to as "Jane Doe (pseudonym)" in the indictment. Likewise, she was called "Jane Doe" at trial. Therefore, that is how we refer to her in this opinion.

talked quickly, and shook uncontrollably. However, she was articulate and a good historian. Sanford testified that Doe described what occurred the night in question. Doe told Sanford that Appellant was standing by her car when she got off work. He told her to get in the vehicle or he would kill her. According to Sanford, Doe stated that Appellant reached over, slapped her, and said he was going to drive, or he would kill her. At a stop sign, he got in the driver's side, pulled her out of the car, and made her get in the passenger seat. Appellant came to a dead end and tried to force her into the back seat, and she would not cooperate. Doe told Sanford that she opened the back door to get away, but he yanked her hair. Appellant made her remove her clothes by the trunk of the car and bend over the trunk, then raped her. He tied her hands behind her back and threw her naked in the trunk. Doe stated that she got loose, popped the trunk, jumped out, and took off running and naked down the street. Doe told Sanford that Appellant initially chased her, but then took the car and drove off. Sanford's examination showed evidence of vaginal intercourse. Sanford also noted abrasions on Doe's legs and left shoulder.

The police officer who inventoried Doe's vehicle found her pants, shoes, underwear, and purse strap in the trunk of the vehicle. And the forensic analyst testified that Appellant cannot be eliminated as a possible contributor of the vaginal samples taken from Doe.

Viewing the above evidence in the light most favorable to the verdict, we conclude a rational jury could have found beyond a reasonable doubt that Appellant intended to sexually abuse or violate Doe to support aggravated kidnapping, even if he was not guilty of aggravated sexual assault. *See* TEX. PENAL CODE ANN. § 20.04(a)(4); *see also **Uddin v. State***, 503 S.W.3d 710, 722 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (stating that sexual assault is not an element of aggravated kidnapping and is distinct from element that defendant intend to violate or abuse sexually). Accordingly, we overrule Appellant's fifth issue.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his first and second issues, Appellant contends that his trial counsel provided ineffective assistance. Specifically, in his first issue, Appellant urges trial counsel's dual role as surety on Appellant's bail bond resulted in a conflict of interest. And in his second issue, he urges that he received ineffective assistance at the punishment phase when evidence of his surrendered bond was admitted into evidence.

4

**Governing Law**

The Sixth Amendment to the United States Constitution guarantees in all criminal prosecutions that the accused shall have the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063-64, 80 L. Ed. 2d 674 (1984); *Monreal v. State*, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997).

In reviewing an ineffective assistance of counsel claim, we apply the United States Supreme Court's two-pronged test established in *Strickland*. *Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986). To prevail on an ineffective assistance of counsel claim, an appellant must show that (1) trial counsel's representation was deficient, and (2) the deficient performance prejudiced the defense to the extent that there is a reasonable probability that the result of the proceeding would have been different but for trial counsel's deficient performance. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. An appellant must prove both prongs of *Strickland* by a preponderance of the evidence. *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Failure to make the required showing of either deficient performance or sufficient prejudice defeats an appellant's ineffectiveness claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

To establish deficient performance, an appellant must show that trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *See Strickland*, 466 U.S. at 687–88, 104 S. Ct. at 2064–65. "This requires showing that [trial] counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, 466 U.S. at 687, 104 S. Ct. at 2064. To establish prejudice, an appellant must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.*, 466 U.S. at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* When it is easier for a reviewing court to dispose of an ineffective assistance of counsel claim on the ground of lack of sufficient prejudice without determining whether counsel's performance was deficient, the court should follow that course. *Id.*, 466 U.S. at 697, 104 S. Ct. 2069.

Ineffective assistance of counsel may result when an attorney labors under a conflict of interest. *Strickland*, 466 U.S. at 686. A defendant can demonstrate a violation of his right to the reasonably effective assistance of counsel if he can show (1) that his counsel was burdened by an

actual conflict of interest and (2) that the conflict had an adverse effect on specific instances of counsel's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 348-50, 100 S. Ct. 1708, 1718-19, 64 L. Ed. 2d 333 (1980); *Acosta v. State*, 233 S.W.3d 349, 356 (Tex. Crim. App. 2007). Until a defendant shows his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance. *Cuyler,* 446 U.S. at 350, 100 S. Ct. at 1719. The Supreme Court emphasized that a showing of the "possibility of a conflict of interest" is insufficient to impugn a criminal conviction. *Id.* An actual conflict of interest exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests, perhaps counsel's own, to the detriment of his client's interest. *Monreal,* 947 S.W.2d at 564.

## Analysis

Appellant applied for court-appointed counsel in October 2019. On September 29, 2020, trial counsel, John Peralta, filed a motion to substitute. According to the motion, Peralta was retained on September 26. He also acted as surety and posted Appellant's bond on September 26. The motion to substitute was granted on October 1. On April 20, 2021, Peralta filed a motion to surrender Appellant's bond. In the motion, Peralta represented to the court that Appellant failed to make his monthly payments under his fee and bond arrangements and failed to stay in weekly contact. He further stated that Appellant had not been in contact since February 19. The motion was supported by an affidavit of surrender. The motion was granted on April 26, and a warrant was issued for Appellant's arrest. On June 25, the trial court reset Appellant's bond in the original amount of $125,000. Peralta, acting again as surety, posted the bond for Appellant on July 1. Appellant failed to appear on November 17. On November 18, judgment nisi was entered against both Appellant and Peralta. Peralta represented Appellant at trial. During the punishment phase, the State introduced, over Peralta's objection, evidence of Appellant's bonds and surrender. That evidence included both bail bonds, motion to surrender, order granting the motion, capias, certification of call, judgment nisi, and affidavit of surrender.

Appellant urges trial counsel was faced with the following conflict of interest: counsel's interest in avoiding liability on the surety bond versus Appellant's interest "in receiving the assistance of loyal counsel." And he claims he was adversely affected by counsel's conflict because he was arrested pretrial due to the motion to surrender and resulting capias. He further

6

urges that he was prejudiced when counsel's affidavit and motion were entered into evidence at punishment, making counsel an adverse witness and resulting in a longer sentence.

However, acting as a surety on a client's bond does not create a per se conflict of interest between attorney and client. *Akridge v. State*, 13 S.W.3d 808, 810 (Tex. App.—Beaumont 2000, no pet.); *Brown v. State*, 974 S.W.2d 289, 292 (Tex. App.—San Antonio 1998, pet. ref'd). But even were we to assume that surrendering the bond and having his client's presence secured for trial constitutes an adverse interest, Appellant has not established that the alleged conflict of interest adversely affected counsel's performance. *See Strickland*, 466 U.S. at 692, 104 S. Ct. at 2067; *Cuyler,* 446 U.S. at 348-50, 100 S. Ct. at 1718-19. Appellant did not complain about his trial counsel's performance prior to or during the trial. And the record demonstrates that trial counsel zealously represented his client at both guilt/innocence and punishment. In fact, Appellant was found "not guilty" of one charge. Trial counsel argued for the least sentence possible at punishment and presented character evidence from family members at the punishment phase. Furthermore, while evidence of Appellant's bonds was admitted into evidence at the punishment phase, the State did not emphasize that evidence in its argument. Instead, the State focused on Appellant's criminal history and the facts of the case. The evidence showed Appellant was previously convicted for evading arrest, aggravated robbery, burglary of a building, and burglary of a habitation. The State argued, in part, as follows:

> [W]e know that our victim escaped from a locked trunk and we don't know what would have happened had she not escaped from a locked trunk. And it was no thanks to him that she escaped from the locked trunk. She had been on a dead-end road and he could have left her there. He'd already told her, you can yell, no one will hear you. But he didn't. He put her in a trunk and he proceeded to drive off. And the fact of the matter is that his conduct was interrupted. He didn't get to finish what he would have done for her.
>
> . . .
>
> The fact is this person has repeated criminal conduct, repeated victimization of persons, repeatedly been incarcerated and got out and reoffended. There's a lack of accountability and a lack of responsibility that you need to consider. Repeated decisions and repeated conduct are indicators of exactly what conduct and decisions you're going to see. Failure to have any remorse for previous conduct is part of the reason why he continued to commit those acts, not just acts that are criminal, but acts that happen at the expense of someone else, acts that create victims.
>
> . . .
>
> His family wasn't on the other end of a knife for his previous aggravated robbery. They didn't get forced into a trunk. Sometimes being locked up is part of a life lesson that you earned and there

can be God-given lessons there if you want to learn them. He is not safe for your community. Only a high punishment will keep the community safe from offenses that he repeatedly commits.

Accordingly, the State focused its argument on the fact that Appellant is not safe for the community based on his actions in this case and his repeated criminal history. Other than admitting the bonds into evidence, the State did not even mention them to the jury. The State also asked for life in prison, which Appellant did not receive.

Based on this record, Appellant fails to show that his trial counsel's performance was adversely affected by any alleged conflict of interest. *See **Strickland***, 466 U.S. at 692, 104 S. Ct. at 2067; ***Cuyler,*** 446 U.S. at 348-50, 100 S. Ct. at 1718-19. Likewise, Appellant fails to show that he was prejudiced by any alleged deficient performance. *See **Strickland***, 466 U.S. at 697, 104 S. Ct. 2069; ***Thompson***, 9 S.W.3d at 813. We overrule Appellant's first and second issues.

## LIMITATION OF CROSS-EXAMINATION

In his third and fourth issues, Appellant argues that the trial court erred by refusing to permit him to cross-examine the victim regarding her pending criminal charges in Angelina County. He contends in his third issue that this was an appropriate area of cross-examination. In his fourth issue, he urges that the trial court's refusal to permit cross-examination on Jane Doe's pending charges violated the Confrontation Clause of the United States Constitution and Article 1, Section 10 of the Texas Constitution.

**Standard of Review and Applicable Law**

The right to confront one's accuser necessarily includes the right to cross-examine. ***Carroll v. State***, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). Exposing a witness's motivation to testify for or against the accused or the State is a proper and important purpose of cross-examination. ***Carpenter v. State***, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998); *see also **Carroll***, 916 S.W.2d at 498 ("This broad scope necessarily includes cross-examination concerning criminal charges pending against a witness and over which those in need of the witness'[s] testimony might be empowered to exercise control."). Parties are allowed great latitude to show "any fact which would or might tend to establish ill feeling, bias, motive and animus on the part of the witness." ***London v. State***, 739 S.W.2d 842, 846 (Tex. Crim. App. 1987). But a trial judge may limit cross-examination as inappropriate for several reasons.

8

*Carroll*, 916 S.W.2d at 498 (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435, 89 L. Ed. 2d 674 (1986) (for example, trial judge may exercise discretion to prevent harassment, prejudice, confusion of the issues, and marginally relevant interrogation)).

To impeach a witness with evidence of pending criminal actions, the proponent of the evidence must establish that the evidence is relevant. *Carpenter*, 979 S.W.2d at 634; *Carroll*, 916 S.W.2d at 494; *London*, 739 S.W.2d at 846–48. However, evidence that a witness is facing pending charges is not relevant for the purpose of showing bias or a motive to testify without some "causal connection" or "logical relationship" between the evidence, which might show bias or motive such as the witness's pending charges, and the "vulnerable relationship" or potential bias or prejudice for the State. *Irby v. State*, 327 S.W.3d 138, 149 (Tex. Crim. App. 2010); *Carpenter*, 979 S.W.2d at 634–35 & n.5. We review this issue for abuse of discretion. *Irby*, 327 S.W.3d at 154.

The required "causal connection" is a matter of relevance. *See* TEX. R. EVID. 401; *Carpenter*, 979 S.W.2d at 634. However, the cross-examiner must show the relevance of the "vulnerable status" or other source of bias to the witness's testimony. *Irby*, 327 S.W.3d at 151–52. All witnesses with pending charges, or who have some other "vulnerable status," are not automatically subject to cross-examination about that status regardless of any lack of relevance to the witness's testimony. *Id*. at 152. The mere existence of pending charges is not always automatically relevant to show the witness's potential bias and motive to testify favorably for the State. *See id*.

**Analysis**

At trial, Appellant wished to question Jane Doe about her pending felony charges. He claimed that charges for intoxication manslaughter and intoxication assault bent her bias toward the prosecution. He further opined that the victim lied about the charges against Appellant and refused to admit it because she feared repercussions as to her pending cases. Appellant claimed that he could show Doe was biased and received benefits from the State because her bond had not been revoked despite being arrested on new charges. He further pointed out that the same office was prosecuting both Doe and Appellant. Appellant argues that the jury was unable to make an informed decision regarding Doe's credibility as a result of the limited cross-examination.

The State responded that a different attorney in the District Attorney's office is handling Doe's other cases. In addition, that specific assistant district attorney had been handling Doe's cases before the district attorney even took office. The State also represented that no offers have been made and there have been no agreements for any testimony.

Appellant argues on appeal that he hoped to expose any bias by exploring Doe's hopes and beliefs about how her testimony would favorably benefit the outcome of her pending felony charges. He contends this is sufficient to create a logical relationship and causal connection. We disagree. While the pending charges were being handled by the Angelina County District Attorney's office, the record demonstrates that different attorneys were handling Appellant's case and Doe's case. Furthermore, the record indicates that the State was very careful to eliminate crossover and the prosecutors did not discuss the other cases with Doe. In addition, the record shows that no offers or agreements were made with Doe on her pending charges. Moreover, Doe was reluctant to testify and had to be subpoenaed for court. Thus, the record does not demonstrate the requisite causal connection between Doe's pending charges and her testimony in this case. *See Carpenter*, 979 S.W.2d at 634–35; *Molina v. State*, 450 S.W.3d 540, 551–52 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also Garcia v. State*, No. 13-19-00390-CR, 2020 WL 7757378, at *4 (Tex. App.—Corpus Christi Dec. 30, 2020, pet. ref'd) (mem. op., not designated for publication) (holding trial court did not abuse its discretion in refusing cross-examination on witness's pending criminal charge because both witness and prosecution explicitly stated that witness was not offered or given any leniency in exchange for his testimony).

Though the constitutional right to confront witnesses encompasses "the opportunity to show that a witness is biased or that his testimony is exaggerated or unbelievable," a trial court "retains wide latitude to impose reasonable limits on such cross-examination 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant." *Irby*, 327 S.W.3d at 145 (quoting *Van Arsdall*, 475 U.S. at 679, 106 S. Ct. at 1435). Under these circumstances, we cannot say the trial court acted beyond that latitude and abused its discretion by refusing to permit cross-examination on Doe's pending criminal charges. We overrule Appellant's third and fourth issues.

In his sixth and seventh issues, Appellant argues the trial court erred in denying his *Batson* challenge because the State improperly exercised peremptory strikes against African American venire members. Appellant's sixth issue attacks the State's peremptory challenge on constitutional grounds, while his seventh issue alleges it violates the Code of Criminal Procedure. We address these issues together.

## Standard of Review and Applicable Law

The Equal Protection Clause of the United States Constitution and Article 35.261 of the code of criminal procedure prohibit the use of a preemptory challenge to strike a potential juror based upon the juror's race. U.S. CONST. amend. XIV; *see Batson v. Kentucky*, 476 U.S. 79, 86, 106 S. Ct. 1712, 1717, 90 L. Ed. 2d 69 (1986); *see also* TEX. CODE CRIM. PROC. ANN. art. 35.261 (West 2006). If a party perceives the other has exercised a preemptory challenge based on purposeful racial discrimination, that party may request what is colloquially termed a "*Batson*" hearing. *See* TEX. CODE CRIM. PROC. ANN. art. 35.261.

A three-step process is used to analyze *Batson* claims: (1) the opponent of the peremptory challenge must present a prima facie case of racial discrimination, (2) if he does so, the burden shifts to the proponent of the peremptory challenge to present a race-neutral reason for the challenge, and (3) if that proponent satisfies this burden, the trial court must then determine whether the opponent has proven purposeful racial discrimination. *Colone v. State*, 573 S.W.3d 249, 263 (Tex. Crim. App. 2019); *Irving v. State*, No. 12-17-00157-CR, 2017 WL 6350097, at *1 (Tex. App.—Tyler Dec. 13, 2017, pet. ref'd) (mem. op., not designated for publication).

A trial court's ruling on a *Batson* challenge must be upheld unless it is clearly erroneous. *Nieto v. State*, 365 S.W.3d 673, 676 (Tex. Crim. App. 2012). To hold that a decision was clearly erroneous, we must be left with a definite and firm conviction that a mistake has been committed. *Goldberg v. State*, 95 S.W.3d 345, 385 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). The clearly erroneous standard is highly deferential because the trial court is in the best position to determine whether the State's facially race neutral explanation for a peremptory strike is genuinely race neutral. *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004). We focus on the genuineness rather than on the reasonableness of the State's asserted race neutral reason. *Id.* at 533–34.

In evaluating the genuineness of the State's proffered race neutral reason, we consider whether (1) the reason is related to the facts of the case, (2) the State meaningfully questioned the challenged venire member, (3) persons with the same or similar characteristics as the challenged venire member were not struck, (4) there was disparate examination of the venire members, and (5) an explanation was based upon a group bias although the trait is not shown to apply to the challenged venire member. *Williams v. State*, 804 S.W.2d 95, 105–06 (Tex. Crim. App. 1991). We consider the entire voir dire record and need not limit our review to the specific arguments propounded in the trial court. *Nieto*, 365 S.W.3d at 676. However, we may not substitute our judgment for the trial court's in deciding that the proponent's explanation was a pretext. *Id.*

## Prima Facie Showing

At the conclusion of voir dire, Appellant raised a ***Batson*** challenge to the State's peremptory challenges regarding venire members 45, 49, 21, 28, and 35. On appeal, Appellant only complains of the State's challenge to venire member 21. The State did not contest at trial that Appellant made a prima facie showing, and as discussed below, the State offered race neutral reasons for its use of a peremptory challenge against venire member 21.

***Batson*** challenges are subject to ordinary rules of procedural default. *See **Flores v. State***, 33 S.W.3d 907, 926 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). When, as here, the State offers explanations for exercising preemptory challenges on the contested venire members, and the trial judge rules on the ultimate question of discrimination, the issue of whether the defendant made a prima facie case is moot and not subject to appellate review. *Id.*; *see also **Colone***, 573 S.W.3d at 263 (State's allegation that it had race-neutral reasons for preemptory challenges renders step one of ***Batson*** analysis moot). Thus, we will proceed to step two.

## Race Neutral Reasons

With respect to its exercise of a peremptory challenge against venire member 21, the State offered the following explanation:

> [Venire member 21] is a social worker. She was slow to answer some of my (indiscernible) questions, but then (indiscernible) questioning of her where she was wearing some facial expressions. I asked her what those facial expressions meant. She didn't -- she declined to tell me what those meant. It seemed to me she was not quite forthcoming and the State felt like due to her responses and her body language, that she was a juror that had – didn't seem to be neutrally postured.

. . .

> It's not just her body language.  It's her slow to answer responses.  Body language and appearance are a valid basis that are race neutral.  That's not all that's been articulated.  She also had a theft by check that might have been dismissed.  I don't know if it's a conviction, but that did show in the criminal history.

In step two of the ***Batson*** analysis, the proponent of the preemptory challenge need only offer an explanation that is racially neutral on its face.  ***Colone***, 573 S.W.3d at 263.  No discriminatory intent is inherent in the prosecutor's explanations.  *See **id**.; **Gibson v. State***, No. 12-18-00314-CR, 2019 WL 7373840, at *2 (Tex. App.—Tyler Dec. 31, 2019, no pet.) (mem. op., not designated for publication).  We therefore conclude that the State satisfied its burden of production by offering a facially race neutral reason for its preemptory challenge to venire member 21.  *See **Gibson***, 2019 WL 7373840 at *2; ***Tennyson v. State***, No. 12-16-00225-CR. 2018 WL 1180750, at *3 (Tex. App.—Tyler Mar. 7, 2018, pet. ref'd) (mem. op., not designated for publication).

## Genuineness of Explanations

After the State's burden of producing race neutral explanations was satisfied, the burden shifted to Appellant to prove that the proffered explanations were mere pretext for purposeful discrimination.  *See **Blackman v. State***, 414 S.W.3d 757, 764 (Tex. Crim. App. 2013).  At this step, "[t]he trial court has a pivotal role in evaluating ***Batson*** claims," because the trial court must evaluate the prosecutor's credibility, and "the best evidence of discriminatory intent often will be the demeanor of the attorney who exercises the challenge." ***Snyder v. Louisiana***, 552 U.S. 472, 477, 128 S. Ct. 1203, 1207, 170 L. Ed. 2d 175 (2008) (internal quotation omitted); *see also **Blackman v. State***, 394 S.W.3d 264, 271 (Tex. App.–Houston [1st Dist.] 2012) (Keyes, J., dissenting), *rev'd*, ***Blackman***, 414 S.W.3d at 771.  "An appellate court misapplies the 'clearly erroneous' standard of appellate review when it substitutes its judgment for that of the trial court in deciding that the prosecutor's facially race-neutral explanation for striking a venire member was a pretext." ***Blackman***, 394 S.W.3d at 272 (Keyes, J., dissenting) (citing ***Gibson***, 144 S.W.3d at 534).

On appeal, Appellant argues that the State's stated reasons were pretextual.  He urges that the State gave no explanation for why it believed a social worker would not make a good juror nor did it explain whether the State has poor success with social workers as jurors.  Appellant

further urges that the State's concerns about venire member 21's demeanor are not supported by the record and cannot be a valid basis for striking her.

We turn to the voir dire record to assess whether the trial court's ruling was clearly erroneous. *Nieto*, 365 S.W.3d at 676. Venire member 21 was questioned several times during voir dire. The State asked the panel whether they could rely on circumstantial evidence to hold someone accountable. The State then specifically asked venire member 21 whether she could do so, to which she answered, "yes." The State then asked, "Yes? You waited a minute. Do you have any questions or thoughts about that?" Venire member 21 shook her head in the negative. The State also asked venire member 21, as well as twelve other panel members, why a victim might be afraid to report a rape. Venire member 21 stated that it might be embarrassing for the victim because a victim may be afraid no one would believe them. Later, the State asked the panel whether they could consider the entire punishment range. The State then asked, "I got to ask, I see the look on your face. Juror Number 21, you haven't thought about that?" She responded that she could consider the full punishment range.

A prospective juror's nonverbal reactions and body language can be race neutral reasons for exercising a peremptory strike. *See id.* at 680. Employment status can also be a racially neutral reason for exercising strikes. *See Middleton v. State*, 187 S.W.3d 134, 142 (Tex. App.– Texarkana 2006, no pet.) (panel member's employment is race neutral explanation, if prosecutor has had poor success with that type worker); *Kennedy v. State*, No. 12-14-00219-CR, 2015 WL 3609096, at *3 (Tex. App.—Tyler June 10, 2015, no pet.) (mem. op., not designated for publication). A prosecutor's reason for striking a juror based on her demeanor is established when the statement is made on the record, undisputed by opposing counsel, and unquestioned by the trial judge. *Yarborough v. State*, 947 S.W.2d 892, 895 (Tex. Crim. App. 1997). While Appellant challenges the authenticity of the State's strike of venire member 21, the prosecutor's genuineness is a question of credibility. We defer to the trial court's assessment of the prosecutor's credibility in explaining his reasoning. *Kennedy*, 2015 WL 3609096, at *4.

The trial court exercises a crucial role in evaluating *Batson* claims, because the trial court must evaluate the prosecutor's credibility, and the best evidence of discriminatory intent is often found in the demeanor of the attorney exercising the preemptory challenge. *Williams*, 804 S.W.2d at 105-06.; *Snyder*, 552 U.S. at 477, 128 S. Ct. at 1208, 170 L. Ed. 2d 175. We cannot minimize the importance of the court's presence at trial. *Tave v. State*, 899 S.W.2d 1, 4 (Tex.

14

App.—Tyler 1994, pet. ref'd). The court was present at voir dire and the ***Batson*** hearing to hear the explanations offered by the State and observe the demeanor of the potential jurors. ***Id***. The prosecutor gave race neutral explanations for its preemptory challenges, and Appellant failed to counter the prosecutor's testimony with evidence demonstrating that the State's explanations were a pretext in an attempt to discriminate. ***Id***. Therefore, we cannot say, based upon the record before us, that the trial court's ruling on Appellant's ***Batson*** challenge was clearly erroneous. *See **Goldberg***, 95 S.W.3d at 385. We overrule Appellant's sixth and seventh issues.

## DISPOSITION

Having overruled Appellant's seven issues, we ***affirm*** the trial court's judgment.

**GREG NEELEY**
Justice

Opinion delivered July 21, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 21, 2023**

**NO. 12-22-00113-CR**

**ZATAYMON TIMON SKINNER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 159th District Court

of Angelina County, Texas (Tr.Ct.No. 2019-0801)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, for which execution may issue, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*